SANDERS BROS. RADIO STATION v. FEDERAL COMMUNICATIONS COMMISSION (TELEGRAPH HERALD, Intervener).

No. 7087.

United States Court of Appeals for the District of Columbia.

Decided Jan. 23, 1939.

Petition for Rehearing Denied Aug. 2, 1939.

Writ of Certiorari Granted Dec. 11, 1939.

See 60 S.Ct. 294, 84 L.Ed. ——.

Louis G. Caldwell, Reed T. Rollo and Percy H. Russell, Jr., all of Washington, D. C., for appellant.

Hampson Gary, George B. Porter, Wm. H. Bauer, Fanney Neyman and Hugh B. Hutchison, all of Washington, D. C., all of the Federal Communications Commission, for appellee.

Eliot C. Lovett, of Washington, D. C., for intervener.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

The Federal Communications Commission granted an application of Telegraph Herald to construct a new radio broadcasting station at Dubuque, Iowa. At the same time it granted an application of Sanders Brothers Radio Station to move its station, WKBB, across the Mississippi River from East Dubuque, Illinois, to Dubuque, Iowa. Sanders Brothers petitioned for a rehearing of the decision granting the Telegraph Herald application; its petition was denied; and this appeal followed. Telegraph Herald intervened herein.

■ Appellee denies that appellant has an appealable interest. Section 402(b) (2) of the Communications Act of 1934,[1] permits an appeal by any person aggrieved or whose interests are adversely affected by any decision of the Commission, granting or refusing an application for a radio station license. This court has held that the nature of an appellant's grievance can be measured on appeal "only by the reasons therefor which the act requires it to give; and in order to determine its appealable interest we must look—and can look only —to those reasons."[2]

■ In the present case appellant alleged in its statement of reasons for appeal that:

"1. The Commission erred in failing to find that there is inadequate and insufficient economic support in Dubuque, Iowa for the station proposed by the Telegraph Herald.

"2. * The Commission erred in failing to find that the operation of the station proposed in Dubuque, Iowa by the Telegraph Herald will result in a financial and economic injury to the appellant, will result in a large loss of operating revenue to the appellant, will further increase its net losses, will impair the service rendered by the appellant to its listening audience, and will destroy the ability of the appellant to render programs of high type and in the public interest.

"3. The Commission erred in failing to find that the appellant, which has' in the past lost large sums of money through the operation of its station and which is at present failing to earn sufficient money to pay its operating expenses and fixed charges, will lose even greater sums by the operation of the station proposed by the Telegraph Herald.

"4. The Commission erred in failing to make any finding with reference to the economic effect upon the appellant by the granting of the application of the Telegraph Herald.

*    *    *    *    *    *

"11. The Commission erred in failing to find by written findings made prior to or concurrently with entry of the decision and issuance of the final order that the granting of the application of the Telegraph Herald would adversely affect the interests of Sanders Brothers Radio Station, licensee of WKBB, and will not serve public interest, convenience and necessity."

These reasons were clearly adequate to present an issue of "economic injury to an existing station through the establishment of an additional station * * *" and that statement of issue is sufficient to furnish proper grounds of contest on appeal.[3]

[1] Act of June 19, 1934, c. 652, 48 Stat. 1064, 1093, 47 U.S.C.A. § 402(b)(2).

[2] Great Western Broadcasting Ass'n, Inc. v. Federal Communications Comm., 68 App.D.C. 119, 123, 94 F.2d 244, 248. See Missouri Broadcasting Corp. v. Federal Communications Comm., 68 App.D.C. 154, 156, 94 F.2d 623, 625, certiorari denied, 303 U.S. 655, 58 S.Ct. 759, 82 L. Ed. 1115.

[3] Great Western Broadcasting Ass'n, Inc. v. Federal Communications Comm., 68 App.D.C. 119, 123, 94 F.2d 244, 248; Pulitzer Pub. Co. v. Federal Communications Comm., 68 App.D.C. 124, 127, 94 F.2d 249, 252.

In its order, effective July 27, 1937, the Commission determined "that public interest, convenience and necessity will be served by granting the applications of Telegraph Herald and Sanders Brothers Radio Station for construction permits." Appellant correctly contends that the Commission's findings were insufficient to support this determination and decision, in so far as it relates to intervener's application, since no finding was made concerning the matter of economic injury.

■ While a radio broadcasting station is not a public utility in the same sense as a railroad, nevertheless radio communication constitutes interstate commerce and involves the public interest, and it is in this respect that Congress has exercised its power to regulate it.[4] Since the power of Congress has not been extended to the point of regulating rates for service, or the establishment of rules requiring like service for the entire public, or limiting profits on the basis of investment, or otherwise, the term—public interest, convenience and necessity—should not be given such a broad meaning as has been applied to it elsewhere in the interpretation of public utility legislation. For that reason we have held that the Commission "is not required to give the owner of an existing station priority * * * because alone of the primacy of its grant."[5] Nevertheless the Act clearly contemplates that consideration shall be given to the equities of existing stations.[6] "In any case where it is shown that the effect of granting a new license will be to defeat the ability of the holder of the old license to carry on in the public interest, the application should be denied unless there are overweening reasons of a public nature for granting it. And it is obviously a stronger case where neither licensee will be financially able to render adequate service. This, we think, is the clear intent of section 402(b) (2) of the statute, which provides for an appeal by an aggrieved person whose interests are adversely affected by a decision of the commission granting or refusing an application."[7]

■ Appellee concedes that no finding was made upon the issue of economic injury, but urges that appellant, although given opportunity to do so, failed to furnish evidence to establish the issue; hence that it was not required to make a finding thereon. But the conclusion does not follow. The issue of economic injury having been clearly presented, the Commission was bound to decide it one way or the other, and to make appropriate findings of fact in support of its decision.[8] Absence of findings, whatever the reason therefor, cannot take the place of adequate findings, and the Commission's decision as to public interest, convenience and necessity cannot stand unless supported by such findings.[9] Moreover, it is not the function of this court to review the evi-

4 Federal Radio Comm. v. Nelson Brothers Bond & Mortgage Co., 289 U. S. 266, 279, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406.

5 Pulitzer Pub. Co. v. Federal Communications Comm., 68 App.D.C. 124, 126, 94 F.2d 249, 251.

6 Federal Radio Comm. v. Nelson Brothers Bond & Mortgage Co., 289 U. S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406.

7 Great Western Broadcasting Ass'n, Inc. v. Federal Communications Comm., 68 App.D.C. 119, 123, 94 F.2d 244, 248; Pulitzer Pub. Co. v. Federal Communications Comm., 68 App.D.C. 124, 127, 94 F.2d 249, 252.

8 Great Western Broadcasting Ass'n, Inc. v. Federal Communications Comm., supra note 7: "* * * we think it is a necessary part of the problem submitted to the commission in the application for broadcasting facilities." The failure of the Commission specifically to re-port the facts on the issue "leaves the parties in doubt as to a matter essential to the case * * *." Beaumont, Sour Lake & Western Ry. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221. See Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 287, 96 F.2d 554, 559, certiorari denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Missouri Broadcasting Corp. v. Federal Communications Comm., 68 App.D.C. 154, 156, 94 F.2d 623, 625, certiorari denied, 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1115.

9 Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 96 F.2d 554, certiorari denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. —; Missouri Broadcasting Corp. v. Federal Communications Comm., supra note 8; Tri-State Broadcasting Co., Inc. v. Federal Communications Comm., 68 App.D.C. 292, 294, 96 F.2d 564, 566; Heitmeyer v. Federal Communications Comm., 68 App. D.C. 180, 95 F.2d 91.

dence for the purpose of making findings [10] or of justifying findings not made.[11]

In its brief the Commission contends that since both appellant and the intervener were found to be financially qualified, and since proper findings were made upon sufficient evidence concerning population, industries, and business establishments, the *assumption* is warranted that there are adequate sources of advertising available in the Dubuque area to support the operation of two broadcast stations. This is a possible inference, but viewed in the light of the finding that appellant is losing money is not a necessary one. Another possible inference is that the Commission totally disregarded the issue of economic injury to appellant; and another, that the Commission considered the issue and found it to be without merit. What actually occurred we are left to surmise. To avoid such a situation is the purpose of the rule.[12] The difficulty, therefore, is that the Commission, in its statement of facts and grounds for decision, has not spoken "with the simplicity and clearness through which a halting impression ripens into reasonable certitude. In the end we are left to spell out, to argue, to choose between conflicting inferences."[13] Again, in its brief, the Commission says:

"The Appellant proposes to continue operating unlimited time, which includes nighttime hours, *whereas the Intervener plans to operate only during the day.* It is a matter of common knowledge that evening hours of operation are generally recognized as the most desirable from the standpoint of commercial advertising. This fact is clearly demonstrated by the Appellant's own advertising rate card, which shows that charges for time during evening hours are materially higher than for time sold during the day (R. 461–462). Obviously these parties cannot compete during such hours."

This seems to indicate an advantage for appellant over intervener in the competition for financial support of their respective stations, and, moreover, appellee argues therefrom that the two may receive the patronage of different classes of advertisers. Similarly, appellee argues that appellant will have an advantage because it has a network affiliation and "The Intervener cannot, therefore, be deemed a competitor for sponsored net work programs, which are generally considered an important source of revenue." Moreover, the Commission argues that differences— in frequency, power, type of station, rates and program service—between appellant's station and intervener's proposed station

---

[10] Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 125, 75 L.Ed. 291: "In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported." See United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 294 U.S. 499, 504, 505, 55 S.Ct. 462, 79 L.Ed. 1023; United States v. Baltimore & Ohio R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587.

[11] Tri-State Broadcasting Co., Inc. v. Federal Communications Comm., 68 App. D.C. 292, 294, 96 F.2d 564, 566: "We cannot review the evidence to determine whether or not there is substantial support therein for findings not made."

[12] See Atchison, Topeka & Santa Fe R. Co. v. United States, 295 U.S. 193, 201, 202, 55 S.Ct. 748, 79 L.Ed. 1382. See also, Baltimore & Ohio R. Co. v.

United States, D.C., N.D.N.Y., 22 F. Supp. 533, 536, 537.

We held in Saginaw Broadcasting Co. v. Federal Communications Comm., supra note 9, that the rule requiring courts and commissions to make basic findings of fact is designed to insure the decision of cases according to the evidence and the law rather than arbitrarily and in derogation of the facts and issues involved; and to apprise the parties and reviewing court of the bases and validity of the decisions thus rendered. In the absence of findings of basic facts the reviewing court cannot determine whether the lower tribunal acted properly in accordance with the evidence presented. The requirement, therefore, is more than a mere technicality, being a safeguard of the interests of all concerned. See Heitmeyer v. Federal Communications Comm., supra note 9; Baltimore & Ohio R. Co. v. United States, supra.

[13] United States v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 294 U.S. 499, 510, 511, 55 S.Ct. 462, 467, 79 L. Ed. 1023. See Beaumont, Sour Lake & Western R. Co. v. United States, 282 U. S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221.

refute the claim of the former that it will suffer economic injury. It contends further that the testimony in the record "does not sustain Appellant's contention that the service areas of the two stations will be practically the same, *but, on the contrary, shows that that of Intervener will be larger.*" [Italics supplied] The conclusion seems to be inescapable, therefore, that economic competition between the two will cover the entire area served by appellant and that if the available potential economic support in that area is inadequate, the result may well be disastrous for appellant or for both. The Commission points out also that intervener plans a program service especially designed to serve the agricultural and educational needs of the surrounding rural area "far more comprehensive in scope than programs of the same general character now broadcast by Station WKBB [appellant's station]"; and that intervener will broadcast stock market reports daily, while appellant does not and will not. All these considerations, persuasively argued by the Commission and fortified by reference to the evidence, indicate inescapably that there was much in the record relating to the issue of economic injury. But it is not sufficient that they be marshalled and presented in the brief on appeal. They must be prepared as findings of fact, upon which the decision of the Commission may be rested. Otherwise the administrative task has not been completed and there is no proper basis for judicial review. Under the circumstances we must hold that the Commission's decision was arbitrary and capricious and consequently must be set aside.[14]

■ Appellant assigned as one of its reasons for appeal the alleged consideration by the Commission of evidentiary matter not offered or received in evidence. In a motion suggesting a diminution of record filed prior to oral argument, appellant alleged that: "it is, and has been for a long time in the past, the regular and openly-acknowledged practice of the Commission to require and receive additional reports such as those described in said paragraphs in each case submitted to it upon report and recommendation of an examiner, and to make use of and consider such additional reports in making its determinations both of law and of fact in each such case. Such additional reports have, according to appellant's information and belief, regularly purported to set forth facts, arguments, principles of law and recommendations as to conclusions of fact and law in the case wherein they have been submitted, and at times have set forth facts not shown by or in contradiction to the evidence, all for the purpose of guiding or influencing the members of the Commission in making their determinations and decisions. Appellant is informed and believes, and therefore states the fact to be, that such additional reports were submitted to the Commission in this case, and that the Commission made use of and considered such additional reports in making its determinations of law and of fact in the instant case. The Commission, however, refuses to permit parties to any case before it to have access to or to learn the contents of any of such additional reports and appellant is unable, therefore, to state the contents of any such additional report submitted to and considered by the Commission in this case."

In reply to the motion the Commission said that the reports referred to "do not themselves constitute evidence in the record nor were they so considered by the Commission in making its decision." We denied the motion. The contention was urged in appellant's brief and again on oral argument. Even the necessity of administrative efficiency cannot excuse the use of star chamber procedures to deprive a citizen of a fair hearing.[15] Consequently, if the Commission had based its decision upon matter not introduced in evidence at

---

14 Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 96 F.2d 554, certiorari denied 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391; Heitmeyer v. Federal Communications Comm., 68 App.D.C. 180, 95 F.2d 91; Tri-State Broadcasting Co., Inc. v. Federal Communications Comm., 68 App.D.C. 292, 96 F.2d 564; Missouri Broadcasting Corp. v. Federal Communications Comm.,

68 App.D.C. 154, 94 F.2d 623, certiorari denied, 303 U.S. 655, 58 S.Ct. 759, 82 L. Ed. 1115; Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291; Atchison, Topeka & Santa Fe R. Co. v. United States, 295 U.S. 193, 202, 55 S.Ct. 748, 79 L.Ed. 1382.

15 Morgan v. United States, 304 U.S. 1, 14, 15, 58 S.Ct. 773, 999, 82 L.Ed. 1129.

the hearing,[16] as was done in United States v. Abilene & Southern R. Co.,[17] the order would have been void, because such matter cannot be considered as evidence when it is not introduced as such;[18] a finding without evidence is beyond the power of the Commission;[19] and an order or decision unsupported by evidence is void.[20]

However, appellant's assertion—upon information and belief—of improper action upon the part of the Commission is entirely unsupported by the record and is contradicted by appellee's positive denial heretofore noted. In its brief, on this appeal, the Commission described the files which it keeps in connection with applications filed with it and said: *"neither these files nor the contents thereof are used as evidence in any case after it is designated for hearing except as the contents of the technical or legal recommendations may be incorporated into the record by the testimony of witnesses under oath and subject to cross-examination."* Under the circumstances the presumption of regularity of official conduct is controlling.[21]

Several other reasons for appeal were assigned by appellant, but as the decision of the Commission must be reversed in any event, it is not necessary to consider them.

Reversed and remanded.

---

[16] See United States v. Baltimore and Ohio Southwestern R. Co., 226 U.S. 14, 20, 33 S.Ct. 5, 57 L.Ed. 104.

[17] 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016.

[18] United States v. Abilene & Southern R. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 68 L.Ed. 1016. See Morgan v. United States, 298 U.S. 468, 480, 56 S. Ct. 906, 80 L.Ed. 1288; West Ohio Gas Co. v. Public Utilities Comm., 294 U.S. 63, 69, 55 S.Ct. 316, 79 L.Ed. 761; Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 76 L.Ed. 598; Interstate Commerce Comm. v. Louisville & Nashville R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431; Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. 375, 379, 88 F.2d 757, 761; Denver Union Stock Yard Co. v. United States, D.C.Colo., 57 F.2d 735, 752.

[19] See cases cited in note 18, supra.

[20] Morgan v. United States, 298 U.S. 468, 481, 482, 56 S.Ct. 906, 912, 80 L. Ed. 1288: "This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred." See The Chicago Junction Case, 264 U.S. 258, 263, 44 S.Ct. 317, 68 L.Ed. 667.

[21] Anniston Mfg. Co. v. Davis, 301 U.S. 337, 357, 57 S.Ct. 816, 81 L.Ed. 1143; United States v. Chemical Foundation, Inc., 272 U.S. 1, 14, 15, 47 S.Ct. 1, 71 L. Ed. 131; Concordia Fire Ins. Co. v. Illinois, 292 U.S. 535, 547, 54 S.Ct. 830, 78 L.Ed. 1411; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 249, 96 F.2d 518, 521, certiorari denied 305 U.S. 604, 59 S.Ct. 65, 83 L.Ed. 384; United States v. Barry, 6 Cir., 67 F.2d 763, 764, certiorari denied, 292 U.S. 648, 54 S.Ct. 857, 78 L.Ed. 1498.